UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No: 1:12-CR-50 |
| v. ) | |
| ) | |
| IHSAAN AL-AMIN A/K/A ) | Judge Curtis L. Collier |
| "ROBERT O'NEIL ROBINSON, JR." ) | |

## **M E M O R A N D U M**

Parties in federal criminal cases often desire to obtain information prior to trial that they believe might be useful in determining their trial strategy and providing them with more information regarding the case. In searching for authority to obtain such information the parties will frequently turn to Federal Rule of Criminal Procedure 17(c). Unfortunately, a cursory reading of this rule has led both government and defense lawyers to abuse the authority provided by Rule 17(c) and to subvert the role of the court. Because of this recurring misunderstanding regarding the authority afforded by Rule 17(c), and the resulting problems imposed on courts, third parties and others, the Court will endeavor through this opinion to clarify the meaning and limitations of Rule 17(c). The Court is hopeful that, through this opinion, parties in federal criminal cases before the Court will have an accurate understanding of Rule 17(c) and will avoid the abuses and problems that have occurred in the past.

The opportunity for the Court to address this issue was occasioned by the Court's discovery on June 7, 2013, that several returns of subpoenas had been filed into the record in this case. The subpoenas ordered certain pharmacies to deliver certain records at a specific time before Magistrate Judge Susan K. Lee. The Court had not authorized such subpoenas and was not aware that there was anything in this case that would suggest it was appropriate for third parties to be compelled to obtain

and deliver information at a hearing.

The context in which this issue arose, i.e., the issuance of subpoenas to third parties for personal and private records of individuals, is the context in which the Court has most frequently been confronted with this problem. Attorneys for obvious reasons are desirous of obtaining information that might damage potential witnesses or cause a jury to question a potential witness's credibility and reliability. For this reason, they will seek medical, mental health, employment, criminal, or sexual records in the possession of third parties that they believe might have some information touching upon the witness's credibility. Since it is not the third parties to which the personal or private information pertains but rather to others, the third parties have no concern about their own personal or privacy rights and therefore little interest in resisting or litigating the subpoena. The individuals to whom the records pertain, and who would be embarrassed or harmed by the release of the information, are not informed of the subpoena and, even if they were, may not have standing to object to the subpoena or protect their own interests. In some instances the records are handed over directly by the third party or directly delivered to the attorney seeking the records without any appearance before a court or the other side even being aware of the issuance of the subpoena. In such circumstances, the individuals to whom the information pertains have no warning that their personal and private information has been divulged and their privacy invaded.

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The defendant in this case, Ihsaan Al-Amin, owned a pain management clinic and was charged with illegally dispensing controlled substances to a number of patients outside the scope of his professional practice and not for a legitimate medical purpose. He is represented by attorney

Richard Heinsman. Beginning around June 7, 2013, Defendant's counsel began issuing subpoenas to various third parties such as the Tennessee Controlled Substance Monitoring Program and several pharmacies (Court File Nos. 43, 44, 50). The subpoenas indicated the third parties were to appear before Magistrate Judge Susan K. Lee for a hearing and provide records of customer prescription data, customer contact data, medical provider data, and insurance or payor data. Information of this sort is private and in some cases protected from disclosure by law. As stated earlier, the Court did not authorize defense counsel to issue these subpoenas. In checking with Magistrate Judge Lee, the Court learned Judge Lee also did not authorize the subpoenas nor did Judge Lee have a hearing set for this purpose on the date defense counsel indicated in the subpoenas.

The Court held a status conference with defense counsel, counsel for the Government, and Judge Lee. The Court informed the parties of its discovery of the subpoenas and inquired of the authority by which they were issued. Defense counsel frankly admitted they were for discovery or investigatory purposes. The Court explained Rule 17(c) subpoenas are not intended to be used as a means of discovery in criminal cases and that counsel must obtain court authorization before issuing such subpoenas. Defense counsel contended he found authority supporting his actions, so the Court gave him and the Government the opportunity to brief these issues (Court File Nos. 52, 53). Counsel, in response to a question from the Court, stated he had received some of the subpoenaed materials and had them in his possession.

Defendant's counsel argues the Supreme Court has not addressed what the prerequisites are for subpoena of a third party (Court File No. 52 at 5). In counsel's view, the Supreme Court has only addressed the prerequisites needed to subpoena the government. *Id.* at 4. Counsel further argues that a less stringent rule should apply to gathering information from non-parties and, citing

3

*United States v. Nachamie*, 91 F. Supp. 2d 552, 563 (S.D.N.Y. 2000), suggests a subpoena is appropriate if it is: (1) reasonable, construed using the general discovery notion of "material to the defense"; and (2) not unduly oppressive for the producing party to respond (Court File No. 52 at 7).

In response, the Government points out the test defense counsel proposed is merely dicta that is not binding on the Court and has not been widely-accepted (Court File No. 53 at 4). The weight of the authority does not support defense counsel's arguments. *Id.* at 5. The Government argues the more stringent four-part test outlined by the Supreme Court in *United States v. Nixon*, 418 U.S. 683, 699 (1974), is the appropriate test. *Id.*

On June 27, 2013, in a status conference before Judge Lee, a subpoenaed individual appeared with the ordered documents in accordance with the date and time indicated by defense counsel on the subpoena. The recipient talked about the time and resources spent by his team to gather and produce the information requested. Judge Lee instructed him to keep the documents in a safe place for the time being and then allowed him to leave. Judge Lee has also received materials from another subpoenaed party by U.S. mail.

## II. DISCUSSION

### A. Text of the Rule

Rule 17 governs the power of the parties in a case to require the attendance of witnesses at a trial or hearing. The rule addresses payment of witness fees where a defendant does not have the financial means to do so. And, most pertinent to our discussion, Rule 17 addresses subpoenas for documents, records, and other objects.

4

In the context of a trial or hearing there is nothing remarkable about the rule or how the rule is to be used. The person subpoenaed appears as ordered at the hearing or trial and provides testimony or delivers the documents, records, or other objects. Whether the documents, records, or other objects are relevant and admissible is also determined at that time. If the documents, records or other objects are ruled admissible, then they are entered into the record as evidence, maintained by the Court, and are accessible by all parties. On the other hand, if the documents, records or other objects are ruled inadmissible, then they do not become a part of the record, are not retained by the Court, and are left in the custody and possession of the person that brought the documents, records or other objects to court pursuant to the subpoena.

The issue then is whether a different process is envisioned for the second sentence of Rule 17(c). That sentence permits the early return of documents, records, or other objects. Defense counsel and a few district courts suggest there is a different process under Rule 17(c). The text of the rule, the case law, and the structure of the rules and the federal criminal process indicate that their understanding of the rule is in error.

Resorting first to the text of Rule 17(c), one can identify four distinct requirements necessary to obtain documents, records, or other objects in advance of trial. The rule reads:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c).

First, the Court must authorize the issuance of the subpoena prior to its issuance. This is in contrast to a subpoena for trial or a hearing. No permission is needed in this instance because the

5

records are returned in open court, they are subject to the requirements of relevance and admissibility, and they are accessible to both sides. Only in the instance of an early production is the need for court authorization present.

Second, the records must be returned to the Court, not the parties. Since the documents, records, and other objects are not discovery, but rather are intended to be admitted into evidence, it is the Court to which the document, records, and other objects must be returned. This necessarily means that the Court must have provided the requesting party the time, date, and location for the return.

Third, the records are maintained by the Court, not the parties. Just as if records were returned in open court at a trial or hearing, the records are retained and maintained by the Court and not the parties. The rule specifically recognizes this by stating "the court may permit the parties and their attorneys to inspect all or part" of the records, documents, and other objects. Fed. R. Crim. P. 17(c)(1). But the records are court records and must remain in the custody and control of the Court and never the parties. Since the records must be returned to the Court, there is no occasion for just one party to the litigation having knowledge of, possession of, or access to the records. It is an abuse of Rule 17(c) for parties or their attorneys to obtain such records or objects from subpoenaed persons and to retain the records or objects prior to their return to the Court.

Fourth, the records must be admissible in evidence. Just as with documents, records, and other objects that are returned in open court, the records must be intended for introduction and capable of being introduced. The records must meet the standards of admissibility that apply at a trial or hearing. This is why the cases almost uniformly hold that records sought for discovery or impeachment are not properly subject to subpoena by Rule 17(c).

6

## B. Placement of the Rule

Rule 16 governs general discovery. It covers discovery responsibilities of both the government and the defense. On its face Rule 17 does not appear to address discovery but rather relates to using the authority of the Court to require the attendance at trial or a hearing of a witness or the production of documents and objects. If Rule 17(c) was meant to be a discovery device it more properly would have been placed in Rule 16.

## C. Case Precedent

This understanding of the rule has been repeatedly expressed by the U.S. Supreme Court, the United States Court of Appeals for the Sixth Circuit, and various district courts and magistrate judges in this circuit. The general discovery rule in federal criminal cases is provided by Rule 16 of the Federal Rules of Criminal Procedure. As explained by the Supreme Court, Rule 16 "deals with documents and other materials that are in the possession of the Government and provides how they may be made available to the defendant for his information." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 219 (1951). It gives a "limited right of discovery." *Id.* at 220. This limited right to discovery applies to both sides. Rule 17 of the Federal Rules of Criminal Procedure was not intended to broaden the scope of discovery or provide another means of discovery. *Id.* It was intended to expedite trial by providing to the parties a time and place before trial to inspect the materials. *Id.* If a defendant uses Rule 16 and discovers evidence which the Government is not going to introduce, it makes sense that the defendant use Rule 17(c) to compel its production. *Id. Bowman* was decided in 1951 so this construction of the rule is not new or unexpected.

In *Nixon*, the Supreme Court set forth a four-part test originally formulated in *United States v. Iozia*, 13 F.R.D. 335, 338 (S.D.N.Y. 1952), that describes the elements that must be met in order

7

to compel production in advance of trial or a hearing:

> In order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

*Nixon*, 418 U.S. at 699-700. The Court summarized these elements as three hurdles that must be cleared: (1) relevancy; (2) admissibility; and (3) specificity. *Id.* at 700.

The Sixth Circuit in *United States v. Vassar*, 346 F. App'x 17, 24 (6th Cir. 2009)[1] reaffirmed this understanding of Rule 17. In *Vassar*, the defendant argued the court improperly quashed certain pretrial subpoenas issued under Rule 17(c). *Id.* The court used the *Nixon* test to guide its analysis and affirmed the district court's decision to quash the subpoenas stating "[a] party may use Rule 17(c) subpoenas to obtain documents if (1) the items are evidentiary and relevant; (2) the items are not otherwise procurable through due diligence prior to trial; (3) the party cannot properly prepare for trial without such pre-trial production and inspection; and (4) the application is made in good faith and is not a fishing expedition." *Id.* (citing *Nixon*, 418 U.S. at 699).

The Sixth Circuit also applied the *Nixon* test in *United States v. Hughes*, 895 F.2d 1135, 1146 (6th Cir. 1990), another case involving subpoena of a third party. In *Hughes*, the defendant subpoenaed a non-party to produce invoices from whole-sale suppliers for pharmacies. *Id.* at 1145. The district court found that the defendant failed to meet Rule 17's requirements of relevance, admissibility, and specificity. *Id.* at 1145-46. Relying on the *Nixon* test to guide its analysis, the Sixth Circuit affirmed, concluding the defendant had not met the requirements. *Id.* at 1146; *see also*

---

[1] *Vassar* is a case that arose in this district.

8

*United States v. Theunick*, 651 F.3d 578, 591-92 (6th Cir. 2011) (noting production of documents pursuant to Rule 17(c) is appropriate when the *Nixon* test is met).

District courts in the Sixth Circuit, interpreting Rule 17 the same way, have also applied the *Nixon* test. *See United States v. Llanez-Garcia*, No. 1:11-cr-00177, 2011 WL 4073920, at *5 (N.D. Ohio Sept. 13, 2011) (noting a subpoena is only appropriate if the *Nixon* test is met and finding the requests in this case were not specific enough); *see also United States v. Corona*, No. 3:05-CR-148, 2007 WL 1894288, at *1 (E.D. Tenn. July 2, 2007) (determining defendant's requests lacked the requisite specificity and seemed to be part of a fishing expedition proscribed by the Supreme Court in *Nixon*); *United States v. Jenks*, 517 F. Supp. 305, 307 (S.D. Ohio 1981) (concluding the defendant failed to make the necessary showing under the *Nixon* test to establish good cause for pre-trial production and inspection of subpoenaed materials).

Magistrate decisions coming out of this district have also acknowledged that this is the proper understanding of Rule 17. In *United States v. Bridges*, No. 3:05-CR-124, 2006 WL 3716653, at *11 (E.D. Tenn. Dec. 14, 2006), the defendant requested the court's authorization to use a Rule 17(c) subpoena. Noting that the Sixth Circuit follows the four-part *Nixon* test for pre-trial production, the court denied the defendant's request and found that circumstances were not extraordinary enough to satisfy the *Nixon* requirements. *Id.* at *12-13.

Similarly, in *United States v. Sutton*, No. 3:09-CR-139, 2009 WL 3757690, at *1-2 (E.D. Tenn. Nov. 5, 2009), the defendant subpoenaed an agent from the Bureau of Alcohol, Tobacco, Firearms, and Explosives, and the Government filed a motion to quash, arguing that the defendant was using the subpoena as a means of discovery. In assessing the propriety of the subpoena, the court, following Sixth Circuit precedent, used the standard formulated by the Supreme Court in

9

*Nixon*. *Id.* at *2. *See also United States v. Jordan*, No. 3:06-CR-102, 2007 WL 1849985, at *4-6 (E.D. Tenn. June 25, 2007) (using the *Nixon* test to determine whether production requested by the defendant pursuant to Rule 17 is proper).

This understanding of Rule 17 is not limited to the Sixth Circuit. It has been stated and followed widely and repeatedly. *See e.g., United States v. Arditti*, 955 F.2d 331, 345-46 (5th Cir. 1992) (applying the *Nixon* test and finding the defendant had not met the requirements under *Nixon*); *In re Martin Marietta Corp.*, 856 F.2d 619, 621 (4th Cir. 1988) (noting "[e]nforcement of a Rule 17(c) subpoena is governed by the standards established in *United States v. Nixon*"); *United States v. Larouche Campaign*, 841 F.2d 1176, 1178 (1st Cir. 1988) (applying the *Nixon* test to determine whether the district court was correct in ordering production under Rule 17(c)); *United States v. Cuthbertson*, 630 F.2d 139, 145 (3d Cir. 1980) (requiring satisfaction of the *Nixon* test by the moving party to obtain pretrial production of subpoena of third parties).

District courts outside the Sixth Circuit have also shared the Court's understanding of Rule 17(c). In addition to affirming the Court's understanding of Rule 17, some of these district court decisions have elaborated on the "three hurdles" noted in *Nixon*: relevancy, admissibility, and specificity. Regarding relevance, the court in *United States v. Mason*, Nos. CR 05-324-RE, CR 05-326-RE, CR 05-328-RE, CR 05-329-RE, CR 05-330-RE, 2008 WL 1909115, at *1 (D. Or. Apr. 25, 2008), drawing on the analysis of the Supreme Court in *Nixon*, explained the defendant must show there is a "sufficient likelihood" the documents sought are material to an issue in the case. *Id.* (citing *Nixon*, 418 U.S. at 700). The "mere hope" that the documents will help the defendant's case is not enough. *Id.* (citing *United States v. Bookie*, 229 F.2d 130, 133 (7th Cir. 1956)).

To be admissible, the information must have a valid evidentiary use under the Federal Rules

10

of Evidence. *See Nixon*, 418 U.S. at 701. The defendant must demonstrate that the subpoenaed materials "contain evidence admissible with respect to the offenses charged in the indictment." *Id.* at 700. As noted above, courts generally agree the need for impeachment evidence is insufficient to require pretrial production. *See id.* at 701.

Courts have repeatedly emphasized that fishing expeditions should be prevented by requiring specificity. *See e.g.*, *United States v. Collins*, No. 11-CR-00471-DLJ (PSG), 2013 WL 1089908, at *4 (N.D.Cal. Mar. 15, 2013); *United States v. Shanahan*, No. S1-4:07 CR 175 JCH, 2008 WL 619213, at *4 (E.D. Mo. Mar. 3, 2008). Therefore, a defendant should know what the evidence subpoenaed consists of or will show. *Shanahan*, 2008 WL 619213, at *4 (quoting *United States v. Johnson*, CR 94-0048 SBA, 2008 WL 62281, at *2 (N.D.Cal. Jan 4, 2008)). Courts have also noted that "any and all" requests are particularly suspect under the specificity prong of a Rule 17(c) analysis. *See e.g., id.* at *4-5 (finding defendant's broad "any and all documents relating to" request failed the *Nixon* test because defendant had not requested specific evidentiary items).

### D. *United States v. Nachamie*

In this case, defense counsel argues neither *Nixon* nor *Bowman* addressed the elements needed for subpoenas of third parties. He contends the *Nixon* test does not apply in this case. Instead, he argues a less stringent test should be applied to gathering information from non-parties. Defense counsel, citing *Nachamie*, 91 F. Supp. 2d at 563, suggests the test for obtaining documents should be whether: (1) the subpoena is reasonable, construed using the general discovery notion of "material to the defense;" and (2) it is not unduly oppressive for the producing party to respond.[2]

---

[2]Of course, if this was the test, the individuals for whom information is sought from third parties would never be in a position to protect themselves from invasions of their privacy. Reasonableness would not be in the purview of the individuals and since the subpoena would not

11

He explains a lower standard is appropriate because the Government is required under Rule 16 to turn over certain information. Therefore, a stringent test makes sense for Rule 17(c) subpoenas of the Government. Because a third party does not have the same obligation to turn over documents, a less stringent test is logical for a Rule 17(c) subpoena of a third party. If a defendant must meet a high standard, like that contained in the *Nixon* test, it may seriously impair his ability to defend himself.[3]

Defense counsel relies on a few cases that have adopted this reasoning and applied the less stringent test. *See Nachamie*, 91 F. Supp. 2d at 563 (questioning the logic of requiring a defendant to meet the high standard in *Nixon* and proposing the lower standard defense counsel argues for here); *see also United States v. Nosal*, No. 08-cr-00237, 2013 WL 782003, at *4 (N.D. Cal. Mar. 1, 2013); *United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008); *United States v. Soliman*, No. 06CR236A, 2008 WL 5114230, at *2 (W.D.N.Y. Nov. 25, 2008).

Though defense counsel has drawn our attention to a few district courts that have applied this

---

be addressed to them, they could never meet the requirement that they demonstrate compliance with the subpoena would be unduly oppressive. These individuals, the "real parties in interest" here, would never be able to challenge the subpoena. The third parties that received the subpoena would have little interest or incentive to resist the subpoena because they would have no interest in whether the subpoena was reasonable or not and since their own personal and private information was not at stake, complying with the subpoena would place only a small burden on them. Only in limited circumstances is there a requirement that victims be notified of these subpoenas.

[3]One of the problems with this view of the rule is that it is exceptionally narrow and requires that one ignore that Rule 17(c) does not apply only to the defense but by its very terms applies equally to both sides in a criminal case. Both sides are authorized to compel the attendance of witnesses at trials and hearings and the production of documents, records or other objects. However, the authorization does not extend to using the power of the Court to go on "fishing expeditions" to seek out information that a party thinks might assist them or give them information to seek yet other information. The right to defend oneself does not extend to using the power of the Court to compel third parties to provide information that may not even be admissible at trial or at a hearing or that is merely "investigatory."

lower evidentiary standard, its application has very limited support and is a distinct minority view. *See, e.g.*, *United States v. Buske*, No. 09-CR-65, 2012 WL 5497848, at *8 n.2 (E.D. Wis. Nov. 13, 2012) (finding the *Nixon* standard proper because the Seventh Circuit adopted the test in the context of subpoenas of third parties); *United States v. Barnes*, No. S9 04 CR 186(SCR), 2008 WL 9359654, at *3 (S.D.N.Y. Apr. 2, 2008) (explicitly rejecting the defendant's argument that the less stringent standard from *Tucker* should apply, reasoning it is not the prevailing law and noting that "all district courts within the Second Circuit, aside from the *Tucker* court, have applied the *Nixon* analysis to third-party subpoenas issued by the defense"); *United States v. Drakopoulos*, No. 02 CR 504 SJ, 2003 WL 21143080, at *2 n.1 (E.D.N.Y. Jan. 13, 2003) (noting the relaxed standard in *Nachamie* is dicta and not binding on the court).

Importantly, the Government points out that the Sixth Circuit applied the *Nixon* test to a subpoena of a third party in *Vassar*. 346 F.App'x at 24. The Sixth Circuit also applied the *Nixon* test in *Hughes*. 895 F.2d at 1145-46. As discussed above, these Sixth Circuit cases as well as Supreme Court cases, district court cases in this circuit, and cases from the overwhelming majority of courts in other circuits have applied *Nixon*. Therefore, as the Government asserts, the great weight of authority favors applying the *Nixon* test rather than the less stringent test suggested by defense counsel.

### E. Rule 17(c) and the Government

The requirements of Rule 17(c) as stated by the Court apply equally to the Government and to the defense. *See United States v. Vanegas*, 112 F.R.D. 235, 239 (D.N.J. 1986) ("The same principles apply where the moving party is the government."). This interpretation of the rule does not require that there be a special construction of the rule that only applies to the defense. The

13

Government has also run afoul of this obvious understanding of Rule 17(c) in some cases. For example, in *United States v. Keen*, 509 F.2d 1273, 1274 (6th Cir. 1975), the Government issued subpoenas to compel potential witnesses to attend pretrial interviews that took place at counsel's office rather than an authorized court proceeding. Emphasizing that "[t]he government's action was clearly unauthorized and improper," the Sixth Circuit determined the Government's actions constituted "impermissible subpoena practice" though it did not reverse the defendant's conviction. *Id.* at 1275. So the argument that forbidding defense counsel to conduct discovery through the use of Rule 17(c) is somehow unfair is simply not accurate. Neither the government nor the defense have a right to use the power of the Court to obtain discovery once an indictment is returned. *See also United States v. Hedge*, 462 F.2d 220, 222-23 (5th Cir. 1972) (noting Government's subpoena of witnesses to appear for pre-trial interview at office of the U.S. Attorney was improper); *United States v. Standard Oil Co.*, 316 F.2d 884, 897 (7th Cir. 1963) (finding that Government's use of subpoenas to summons witness for private interrogation without counsel was not proper according to the Court's interpretation of Rule 17).

In this case, defense counsel admits the issuance of the subpoenas was "procedurally flawed" (Court File No. 52 at 8).[4] Defense counsel did not first seek the materials from the Government, nor did he get court authorization before issuing the subpoenas. Furthermore, as discussed above, his inclusion of a court date and time when there was no court proceeding set for that purpose was a serious misrepresentation. Accordingly, the Court concludes the subpoenas were never legal

---

[4] Although the Court has found that counsel issued the subpoenas without authority and therefore the subpoenas were not in fact court subpoenas, the Court does not make a finding that counsel acted in bad faith. On the contrary, the Court concludes counsel's actions were prompted by his ignorance of the requirements of Rule 17(c). For this reason the Court will not impose sanctions against counsel.

14

instruments and their issuance was an abuse of the authority of the Court.

## III. CONCLUSION

Based upon the Court's analysis as provided above, the Court concludes the subpoenas that are the subject of this opinion were issued in violation of the requirements of Rule 17(c).

### A. Requirement of Advance Court Authorization.

Here, the issuance of the subpoenas fails to comply with any of the requirements of a Rule 17(c) subpoena. First, neither this Court nor Magistrate Judge Lee authorized them. In fact, neither this Court nor Magistrate Judge Lee even knew they had been issued until returns had been made. Since no court authorization existed for the subpoenas, they were not in reality legitimate and genuine orders of this Court and any reliance upon them was misplaced. The subpoenas gave the false appearance that the Court had authorized them and was requiring submission of the records. This was not the case. Presumably, these records pertained to medical problems and treatments of individuals. Such personal information is sensitive and is entitled to a great degree of privacy, and a high hurdle would have to be surmounted to demonstrate that any particular record would be admissible. It is not the province of the Court to grant to counsel the power to go rummaging through the personal and private records of citizens to see if there might be something in the records that might be helpful to a party in a criminal case. Since these subpoenas were issued in violation of Rule 17(c), they were issued without any authorization of the Court and are not legitimate and genuine. Anyone acting in reliance on these subpoenas was misled if they wrongly believed the Court was compelling compliance.

### B. There was no Hearing or Other Court Date to Receive the Records.

Including a fabricated court date on a subpoena that compels a recipient to appear before the Court is a serious misrepresentation. *See United States v. Llanez-Garcia*, No. 1:11-cr-00177, 2011 WL 4073920, at *5-6 (N.D. Ohio Sept. 13, 2011). There was no hearing before Magistrate Judge Lee where the records were to be admitted into evidence as the face of the subpoenas suggested. Rule 17(c) contemplates the records will be returned in open court in the presence of the parties or at such other time and place as the Court may select. The date and location for the return on the subpoenas were false. This in and of itself would destroy the legitimacy of the subpoenas.

**C.     The Records were not Returned to the Court but were Provided to Counsel**.

Counsel admitted he had received certain of the records. There is no provision in the rule for the parties to receive records. The records should not have been provided to counsel, and counsel should not have accepted them but rather if the subpoena had been proper they would have been in the custody and control of the Court and both parties may have been permitted to inspect the records. Counsel's acceptance of the records is also grounds for invalidation of the subpoenas even if the Court had authorized them.

**D.     The Records were not Sought to be Admitted into Evidence**.

Counsel conceded he sought the records for "investigatory" purposes. This is an improper purpose. The party seeking authority for Rule 17(c) subpoenas must be in a position to demonstrate that the records requested are admissible in evidence. Using the power of the Court to obtain information that might advance an investigation is an abuse of the authority of the Court. By his admission, counsel is conceding he cannot demonstrate that the requested information is admissible into evidence at the trial of this case. This is also grounds for invalidation of the subpoenas.

**E.     Conditions Imposed on Counsel**

For the foregoing reasons, the Court concludes the *Nixon* test is the appropriate standard in this case, that standard has not been met, and defense counsel improperly issued Rule 17 subpoenas. The Court will require the following:

(1) Defense counsel must return all documents and materials obtained as a result of the subpoenas. No copies of those materials can be retained. Also, counsel shall not retain any notes or other details pertaining to the information in the documents and materials.

(2) Defense counsel is encouraged to, but is not required to, write a letter to the subpoenaed third parties explaining that the subpoenas were issued without authorization of the Court and that he should not have received the documents and materials.

(3) The Government must contact each of the individuals named in the subpoenas and inform them that their personal records had been improperly obtained but the records were returned to the pharmacies in question and the person improperly accessing their records is forbidden to make any use of the records.

(4) All records in the possession of the Court will be returned to the subpoenaed third parties. The Court will notify those parties that they may retrieve the records and documents at their convenience.

(5) Defense counsel, a CJA attorney, will not be paid for any work done with respect to issuing the subpoenas or compiling, reading, organizing, note taking, or litigating this issue. This condition also applies to paralegals, other attorneys, private detectives, and staff involved in this matter.

(6) The Court will not pay the witness expense associated with preparing and delivering the documents.

Though the Court will not impose sanctions,[5] there are necessarily certain consequences for the improper issuance of Rule 17 subpoenas. The costs defense counsel will have to bear himself

---

[5] Other courts in similar circumstances have imposed sanctions. *See United States v. Llanez-Garcia*, No. 1:11-CR-00177, 2012 WL 1571522 (N.D. Ohio May 3, 2012). The Court's decision to not impose sanctions should not be interpreted as making light of the conduct here. As stated above, the Court excuses counsel's conduct because the Court attributes his conduct to ignorance of the rule. With the benefit of this opinion, no counsel in the future will have that excuse and can expect sanctions for improperly issuing Rule 17(c) subpoenas.

17

will serve as a deterrent. Furthermore, this opinion should clarify the law in this area to ensure other attorneys will not misuse the subpoena power and will seek the authorization of the Court in the future.

**An Order shall enter.**

/s/
**CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE**