UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| IHSAAN AL-AMIN, | ) |
| | ) |
|    *Petitioner*, | ) |
| | ) Nos.: 1:18-CV-14, 1:18-CV-15 |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) Judge Collier |
| | ) |
|    *Respondent*. | ) |

## **M E M O R A N D U M**

Before the Court is Petitioner's motion to vacate his sentence under 28 U.S.C. § 2255. (Doc. 2 in Case No. 1:18-cv-14, Doc. 1 in Case No. 1:18-cv-15.)[1] The Government has responded in opposition. (Doc. 15.) Petitioner has not filed a reply and the time to do so has expired. *See* E.D. Tenn. L.R. 7.1(a). For the reasons set out below, the Court will **DENY** Petitioner's motion.

**I.**    **BACKGROUND**

   **A.**    **Offense Conduct**

On November 14, 2013, Petitioner pleaded guilty to one count of knowingly and intentionally dispensing, and causing to be dispensed, quantities of hydrocodone, outside the scope of professional practice and not for a legitimate medical purpose, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(E) and 18 U.S.C. § 2, and two counts of willfully attempting to evade and defeat a large part of the income tax he owed to the United States, by preparing and causing to be prepared, and signing and causing to be signed, a false and fraudulent United States Individual Tax

---

[1] All docket numbers are to docket entries in Case No. 1:18-cv-14 unless otherwise indicated.

Return filed with the Internal Revenue Service ("IRS"), in violation of 26 U.S.C. § 7201. (Docs. 58, 61, 63 in Case No. 1:12-cr-50.)

According to the amended plea agreement, Petitioner was a Tennessee-licensed physician who operated a solo practice, the O'Neil Medical Clinic, in Chattanooga, Tennessee. (Doc. 63 at 3 in Case No. 1:12-cr-50.)

On August 28, 2006, Petitioner caused an income tax return to be prepared for the 2005 taxable year in which he claimed his taxable income was $6,286.00, when he knew his taxable income that year was approximately $321,807.00. (*Id.* at 4–5.) On August 18, 2009, Petitioner caused an income tax return to be prepared for the 2006 taxable year, and claimed his taxable income was $53,766.00, when his taxable income for 2006 was approximately $262,871.00. (*Id.* at 5.) Petitioner admitted he willfully filed his tax returns with the intent to evade and defeat a large part of the income tax due, and paid an amount substantially less than what he owed. (*Id.*)

Beginning in August 2009, law enforcement employed an informant to pose as a patient at Petitioner's medical clinic. (*Id.* at 3.) The informant was prescribed controlled substances by Petitioner and requested a prescription for pain medication for his brother. (*Id.* at 3–4.) The informant explained that his brother was a long-distance truck driver and was not able to visit a doctor for an examination. (*Id.* at 4.) Petitioner stated that the informant's brother would have to come into the office. (*Id.*) On December 8, 2009, an undercover agent posing as the informant's brother went to Petitioner's office. (*Id.*) The undercover agent told Petitioner he had back pain, but did not provide any medical records or documentation of his pain. (*Id.*) Petitioner performed a cursory physical exam and asked the undercover agent to provide documentation of his back pain, either with an X-ray or other type of image, before his next visit. (*Id.*) On December 29, 2009, Petitioner wrote a prescription for the undercover agent for twenty-one tablets of

Hydrocodone 10mg. (*Id.*) For the purposes of the plea agreement, Defendant agreed that the prescription was not for a legitimate medical purpose. (*Id.*)

### B. Sentencing Proceedings

Petitioner's sentencing proceedings took place over three days. (Docs. 133, 135, 148 in Case No. 1:12-cr-50.) On the first day of the proceedings, Petitioner's counsel, Hallie McFadden and David Ward, objected to the Presentence Report on four grounds. His counsel asserted there was insufficient evidence to apply the two-level tax-loss enhancement under USSG § 2T1.1(b)(1), the four-level leadership enhancement under USSG § 3B1.1(a), or the two-level firearm enhancement under USSG § 2D1.1(b)(1). (Doc. 151 at 7–9 [May 4, 2015, Hearing Tr. at 7:7–25, 8:1–4, 9:9–25] in Case No. 1:12-cr-50.) His counsel also argued any conduct regarding other patients not included in the plea agreement should not be considered by the Court because such conduct was not illegal and was not relevant to the conduct to which Petitioner pleaded guilty. (*Id.* at 8–10 [May 4, 2015, Hearing Tr. at 8:18–25, 9:1–8, 10:9–15].)

In response to these objections, the Government presented testimony from Charles Whitson, a supervisory investigator with Tennessee's Health-Related Boards, Office of Investigations, Scott Kennedy, a special agent with IRS Criminal Investigation, and Dr. Stephen Loyd, the chief of medical services at James H. Quillen Veterans Affairs Medical Center in Johnson City, Tennessee. (Docs. 151, 152 in Case No. 1:12-cr-50.) Petitioner's counsel cross examined each of the Government's witnesses and presented testimony from Dr. Donald Ray Taylor, a pain management and addiction specialist. (*Id.*)

Based on the testimony presented, the Court found Petitioner's conduct related to four of his patients not included in the plea agreement was both illegal and sufficiently connected to the conduct in the plea agreement to warrant consideration in sentencing him. (Doc. 153 at 3 [June 1,

3

2015, Hearing Tr. at 374:9–13] in Case No. 1:12-cr-50.) However, the Court found there was insufficient evidence to support imposition of the leadership or firearm enhancements. (*Id.* at 5, 8–9 [June 1, 2015, Hearing Tr. at 376:14–22, 379:15–25, 380:1].) Finally, the Court found the objection to the two-level tax-loss enhancement moot because adding or removing it would not alter the guidelines calculation. (*Id.* at 10 [June 1, 2015, Hearing Tr. at 381:4–7].)

Petitioner was sentenced to one hundred months' imprisonment followed by two years of supervised release. (Doc. 149 in Case No. 1:12-cr-50.)

### C. Appeal Proceedings

Petitioner filed an appeal to the Sixth Circuit Court of Appeals, and the Sixth Circuit affirmed Petitioner's sentence. (Docs. 147, 156, 157 in Case No. 1:12-cr-50.) The Sixth Circuit explained that the Court did not err in considering conduct related to four patients not included in the plea agreement because the Court was permitted to consider relevant evidence outside of the facts included in the plea agreement. (Doc. 156 at 2–3 in Case No. 1:12-cr-50.) The Sixth Circuit also found that the Court had not erred in crediting the Government's expert over Petitioner's expert because there were two permissible views of the evidence. (*Id.* at 3–4.) The Sixth Circuit further held that Petitioner's objection to the Court's decision not to rule on the two-level enhancement under USSG §2T1.1(b)(1) was unfounded because Petitioner failed to challenge the decision at sentencing and the Court did not plainly err in finding the objection moot. (*Id.* at 4.) Finally, the Sixth Circuit held Petitioner did not overcome the presumption that his sentence was substantively reasonable. (*Id.* at 5.)

Petitioner then filed a writ of certiorari to the Supreme Court, which was denied on January 11, 2017. (Docs. 158, 159 in Case No. 1:12-cr-50.)

### D. 28 U.S.C. § 2255 Petition

On January 23, 2018, Petitioner filed the instant 28 U.S.C. § 2255 petition, moving to vacate his sentence to time served based on three main arguments: first, Petitioner challenges the validity of his guilty plea; second, Petitioner raises several claims of ineffective assistance of counsel; and third, Petitioner asserts the Government failed to provide exculpatory evidence prior to his sentencing. (Docs. 2, 11.) The Government has filed a response in opposition (Doc. 15), and the time for filing a reply has expired. *See* E.D. Tenn. L.R. 7.1(a).

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a federal prisoner may move to vacate, set aside, or correct a sentence when the sentence imposed was in violation of the Constitution or federal law, the court was without jurisdiction to impose such a sentence, the sentence was in excess of the maximum authorized by law, or the sentence is otherwise subject to collateral attack. To prevail on a § 2255 motion, the petitioner "must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001) (citing *United States v. Addonizio*, 442 U.S. 178, 185–86 (1979)). Thus, "a petitioner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). This is in line with the historic meaning of habeas corpus, which is "to afford relief to those whom society has 'grievously wronged.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

Rule 4(b) of the Rules Governing Section 2255 Proceedings requires a district court to summarily dismiss a § 2255 motion if "it plainly appears from the face of the motion, any attached

5

exhibits, and the record of the prior proceedings that the moving party is not entitled to relief[.]" *See* Rules Governing Section 2255 Proceedings in United States District Courts Rule 4(b).

If the motion is not summarily dismissed, Rule 8(a) of the Rules Governing Section 2255 Proceedings requires the district court to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. *See* Rules Governing Section 2255 Proceedings in United States District Courts Rule 8(a). A petitioner's burden of establishing that he is entitled to an evidentiary hearing is relatively light. *See Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018). If a petitioner presents a legitimate factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)).

An evidentiary hearing is not required, however, if "the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Martin*, 889 F.3d at 832 (quoting *MacLloyd v. United States*, 684 F. App'x 555, 559 (6th Cir. 2017) (internal quotation marks omitted)). Nor does a petitioner's assertion of innocence, without more, entitle him to a hearing. *Martin*, 889 F.3d at 832.

### III. DISCUSSION

The Court conducted an initial review of Petitioner's § 2255 motion and determined from its face that it should not be summarily dismissed. (Docs. 2, 5.) Upon further review of the submissions of the parties, the record, and applicable law, the Court finds that a hearing is not necessary to resolve the motion.

6

The Court will first consider Petitioner's challenge to the validity of his guilty plea, and will then turn to the claims of ineffective assistance of counsel, before finally addressing Petitioner's allegations that the Government withheld exculpatory evidence.

## A. Validity of Guilty Plea

Petitioner asserts his guilty plea is invalid because he was never informed that he would be "tried" at his sentencing hearing for an incident, the overdose of his former patient, Coey Waller, that was not included in his plea agreement and for which he was not responsible. (Doc. 2 at 5.)

In response, the Government first notes that this claim was not raised on appeal and Petitioner has not shown good cause for failing to raise it then. (Doc. 15 at 16.) As a result, the Government contends Petitioner's challenge is procedurally defaulted and should be denied. (*Id.*) Even if it were not procedurally defaulted, the Government asserts the record shows Petitioner was aware that relevant conduct would impact his sentencing, and thus Petitioner's claim fails on the merits as well. (*Id.*)

"[T]he voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Bousley v. United States*, 523 U.S. 614, 621 (1998). A failure to challenge the validity of a guilty plea on direct appeal will result in the claim being procedurally defaulted on collateral review unless the defendant can show cause and actual prejudice, or that he is "actually innocent." *Id.* at 622. To show cause, a petitioner must demonstrate that an "objective factor external to the defense" prevented his or her counsel from complying with the procedural rule or that the procedural default was because of his or her counsel's constitutionally ineffective performance. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice requires a petitioner to show "not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire

7

trial with error of constitutional dimensions." *Id.* at 494 (quoting *Frady*, 456 U.S. at 170) (emphasis in original). "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (internal quotations omitted).

Here, Petitioner appealed his sentence, but did not include a challenge to the validity of his guilty plea. (Docs. 147, 156 in Case No. 1:12-cr-50.) Thus, Petitioner's § 2255 challenge to the validity of his guilty plea is subject to procedural default unless Petitioner can show cause and prejudice for failing to raise it earlier, or actual innocence.

Petitioner asserts he was abandoned by his counsel in late fall 2015. (Doc. 2 at 11.) However, the notice of appeal was filed on June 1, 2015 (Doc. 147 in Case No. 1:12-cr-50), and Petitioner's opening brief was filed on September 21, 2015, *see* Appellant Brief, *United States v. Al-Amin*, Case No. 15-5583, Doc. 17 (6th Cir. 2016). Thus, even if his counsel truly abandoned him in late fall of 2015, he still had an opportunity to raise the issue with his counsel before the appeal was filed. Petitioner does not assert there were any obstacles that impeded his counsel's ability to raise the claim on appeal or that his counsel ignored a request to raise the issue on appeal. While Petitioner claims his § 2255 petition was the first opportunity for him to raise these issues, he does not provide any evidence to support this assertion and it is undermined by the fact that he filed an appeal. (*See* Doc. 2 at 11.) As a result, Petitioner has not offered any evidence to support a finding that the failure to challenge his guilty plea on appeal was due to cause and prejudice. Because Petitioner does not argue he is "actually innocent," his challenge to the validity of his guilty plea is procedurally defaulted. *See Bousley*, 523 U.S. at 621–22.

Even if Petitioner's claim were not procedurally defaulted, it would fail on the merits. The amended plea agreement, which Petitioner reviewed and signed, states that the facts provided in

8

the agreement "do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case." (Doc. 63 at 3 in Case No. 1:12-cr-50.) Petitioner asked his attorney about this section when he changed his plea to guilty. (Doc. 177 at 28 [Nov. 14, 2013, Hearing Tr. at 28:5–15] in Case No. 1:12-cr-50.) As his attorney explained to Magistrate Judge Susan K. Lee, Petitioner "had a question about our ability to present additional proof at sentencing. I showed him the part of the plea agreement that allows the government and us to present additional proof at sentencing." (*Id.* [Nov. 14, 2013, Hearing Tr. at 28:7–11].) In addition, Petitioner moved for release pending sentencing in part because his medical expertise and his interpretation of his handwriting on ten thousand pages of medical charts would be beneficial in determining what conduct, if any, would be relevant for the Court to consider at sentencing. (Doc. 60 at 4 in Case No. 1:12-cr-50.) Thus, the record demonstrates Petitioner was aware facts could be introduced at the sentencing hearing regarding conduct not included in the plea agreement.

Accordingly, Petitioner's challenge to the validity of his guilty plea will be denied.

### B. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are governed by the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish an ineffective assistance of counsel claim,

> [f]irst the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687.

"The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. There is a strong presumption that counsel's conduct was reasonable. *Id.* at 689; *see also Sims v. Livesay*, 970 F.2d 1575, 1579–580 (6th Cir. 1992) ("The court should begin with a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance") (internal quotations and citations omitted). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

Here, Petitioner has alleged five claims of ineffective assistance of counsel and a separate claim of cumulative error. The Court will evaluate each claim in turn.

### 1. Failure to Review or Use Exculpatory Evidence

Petitioner contends his attorneys failed to review Coey Waller's medical records or use them at the sentencing hearing. (Doc. 2 at 15, 18, 20.) As a result, Petitioner asserts his counsel defended him as if he had been responsible for Mr. Waller's overdose despite the evidence in the medical records to the contrary. (*Id.*) Petitioner asserts this failure by his attorneys constitutes performance well below the objective standard of reasonableness and, but for that deficiency, the outcome of his case would have been different. (*Id.*)

The Government contends that the evidence presented by both parties at the sentencing hearing made it clear Petitioner did not prescribe the medication that caused Mr. Waller's overdose. (Doc. 15 at 17.) The Government also states Petitioner's counsel introduced Mr. Waller's medical records into evidence and offered detailed references to the records during questioning, demonstrating his counsel did review and use the records. (*Id.* at 18.) As a result,

10

the Government contends, there was no error by Petitioner's counsel to support an ineffective assistance of counsel claim. (*Id.*)

Petitioner's counsel attached Mr. Waller's medical records to a sentencing memorandum submitted to the Court and entered the records into evidence on the first day of the sentencing proceedings. (Doc. 127 (Notice of Manual Filing of CD of Medical Records), Doc. 151 at 144–45 [May 4, 2015, Hearing Tr. at 144:15–25, 145:5–6] in Case No. 1:12-cr-50.) When questioning the Government's witnesses, Petitioner's counsel repeatedly referred to specific information found in Mr. Waller's medical records. (*See, e.g.,* Doc. 151 [May 4, 2015, Hearing Tr. at 67:7–14 (directing Agent Kennedy to Erlanger Record in Mr. Waller's medical chart), 146–150 (cross examining Government's expert on specific documents in Mr. Waller's medical records)] in Case No. 1:12-cr-50.) Petitioner's counsel also made clear in the hearings that Petitioner did not prescribe the Xanax involved in Mr. Waller's overdose. (*See, e.g.,* Doc. 151 [May 4, 2015, Hearing Tr. at 67:11–14 (Petitioner's counsel clarifies Mr. Waller overdosed on Xanax), 120:18–21 (Government's expert states Petitioner did not prescribe Xanax)] in Case No. 1:12-cr-50.) Thus, the record directly contradicts Petitioner's claims that his counsel failed to review or use Mr. Waller's medical records and that they defended him as if he had been responsible for Mr. Waller's overdose.

As a result, Petitioner has not demonstrated his counsel's performance was deficient, and his ineffective assistance of counsel claim on this issue will be denied.

### 2. Failure to Call Witnesses

Petitioner claims his attorneys' failure to call Mr. Waller, Gloria Woods, a nurse practitioner at Petitioner's clinic, or any of the hospital or emergency room personnel involved in the treatment of Mr. Waller's overdose as witnesses at his sentencing hearing constituted a

deficient performance that prejudiced his defense. (Doc. 2 at 6, 23.) Petitioner contends testimony from Mr. Waller, Ms. Woods, or the above medical personnel would have been exculpatory on Petitioner's behalf by clarifying that Mr. Waller did not overdose on any medication Petitioner prescribed. (*Id.*) Petitioner argues that it is highly probable the outcome of his sentencing hearing may have been different but for his attorneys' deficient performance on this issue. (*Id.*)

In response, the Government first notes that the decision to call a witness is generally a matter of trial strategy, and the failure to call a witness only constitutes ineffective assistance of counsel if it deprives a defendant of a substantial defense. (Doc. 15 at 17.) The Government then explains that Mr. Waller's testimony would not have helped Petitioner because the parties agreed Mr. Waller's overdose was not caused by medication Petitioner prescribed, and Mr. Waller's testimony "would have undoubtedly highlighted Petitioner's failure to detect and prevent [Mr. Waller's] dangerous behavior." (*Id.* at 18.) As a result, the Government argues his counsel's decision was strategic and prudent. (*Id.*)

"The failure to call favorable witnesses can amount to ineffective assistance where it results in prejudice to the defense." *Pillette v. Berghuis*, 408 F. App'x 873, 884 (6th Cir. 2010) (citing *Towns v. Smith*, 395 F.3d 251, 258–60 (6th Cir. 2005)). Specifically, a defendant must demonstrate "a reasonable probability that the outcome of the proceedings would have been different had his counsel introduced the [witness's] testimony." *Fitchett v. Perry*, 644 F. App'x 485, 493 (6th Cir. 2016) (internal quotations omitted).

Here, Petitioner claims testimony from Mr. Waller, Ms. Woods, or the medical personnel involved in treating Mr. Waller's overdose would have been exculpatory on the issue of whether he prescribed the medication on which Mr. Waller overdosed. (Doc. 2 at 6, 23.) However, as the Court has already discussed, there was no dispute at sentencing that Mr. Waller overdosed on

12

medication Petitioner did not prescribe. Because Petitioner has not offered any other purpose for such testimony, Petitioner has failed to demonstrated that testimony from Mr. Waller, Ms. Woods, or any of the medical personnel involved in Mr. Waller's overdose would have changed the outcome of the proceedings. As a result, Petitioner has not shown that his counsel's decision prejudiced his defense, and his ineffective assistance of counsel claim on this issue will be denied.

### 3. Failure to Allow Petitioner to Speak with Expert Prior to Sentencing

Petitioner contends that his attorneys did not allow him to speak with Dr. Taylor, the pain management and addiction specialist who testified for Petitioner, until the sentencing proceedings. (Doc. 2 at 15.) Petitioner argues that as a result Dr. Taylor took the stand "very much misinformed." (*Id.*)

The Government asserts the decision of whether to let a defendant speak with an expert is a strategic litigation choice. (Doc. 15 at 18–19.) The Government contends it was reasonable for Petitioner's counsel to not allow Petitioner to speak with Dr. Taylor before sentencing, especially because any conversations between Petitioner and Dr. Taylor might have been subject to cross examination. (*Id.*) The Government also asserts Petitioner has not identified any information he would have told the expert that would have changed the outcome of the hearing. (*Id.* at 19.) Thus, the Government contends there were no errors by Petitioner's counsel. (*Id.*)

Dr. Taylor provided his expert opinion on whether Petitioner's practices with respect to four of his patients were medically reasonable. (Doc. 152 at 72, 73 [Taylor Direct Exam. at 239:19–25, 240:1–8] in Case No. 1:12-cr-50.) After reviewing the patients' medical records, Dr. Taylor ultimately concluded that Petitioner's prescription practices and treatment decisions with respect to these patients were reasonable. (*Id.* at 95–96, 100, 107, 114 [Taylor Direct Exam. at 262:10–25, 263:1–3, 267:16–25, 274:9–24, 281:3–18].)

Petitioner has not offered any evidence to suggest attorneys routinely allow defendants to speak with experts prior to sentencings or that a failure to do so falls outside the "wide range of reasonable professional assistance." *See Sims*, 970 F.2d at 1580 (internal quotations and citations omitted).

Further, even assuming Petitioner's counsel were deficient in failing to allow Petitioner to meet with Dr. Taylor before the sentencing proceedings, Petitioner has not provided any evidence that his counsel's decision prejudiced his defense. Petitioner does not point to any specific testimony that was incorrect because Petitioner did not meet with Dr. Taylor until his sentencing hearing, nor is there any evidence that Dr. Taylor's meeting with Petitioner prior to the hearing would have resulted in a change in the hearing's outcome.

Accordingly, the Court will deny Petitioner's ineffective assistance of counsel claim on this issue.

### 4. Misrepresentation of Gloria Woods's Credentials

Petitioner asserts his attorneys misled the Court regarding Gloria Woods's credentials and abilities by causing the Court to believe Ms. Woods was a physician's assistant when she was actually a nurse practitioner. (Doc. 2 at 21.) Petitioner asserts this mistake led the Court to undervalue Ms. Woods's testimony, and thus prejudiced his defense. (*Id.* at 21–22.)

The Government states Ms. Woods was only mentioned twice: first, Agent Kennedy testified that Ms. Woods worked for Petitioner as an "in-house psychologist," and second, Dr. Loyd stated Ms. Woods was a nurse practitioner at Petitioner's clinic. (Doc. 15 at 19.) Thus, the Government asserts there is no evidence Ms. Woods's credentials were misrepresented. (*Id.*)

The record demonstrates that Ms. Woods's credentials were not misrepresented at the sentencing proceedings. Agent Kennedy stated twice on cross examination that Ms. Woods acted

14

as the in-house psychologist for Petitioner's clinic. (Doc. 151 [Kennedy Cross Exam. at 70:19–20, 71:1–2] in Case No. 1:12-cr-50.) In addition, Petitioner's counsel provided Mr. Waller's medical chart to Dr. Loyd, which confirmed Ms. Woods was a nurse practitioner. (*Id.* [Loyd Cross Exam. at 164:24–25, 165:1–15].)

Thus, there is nothing in the record to suggest Ms. Woods's credentials were misrepresented to the Court, nor that his counsel misled the Court in any manner with respect to her credentials or abilities. Because Petitioner has not demonstrated his counsel erred when discussing Ms. Woods's credentials, his claim of ineffective assistance of counsel based on Ms. Woods's credentials will be dismissed.

### 5.     Failure to Object to Firearms

Petitioner asserts his attorneys should have objected to the Government's claims that firearms were involved in his case. (Doc. 2 at 8, 25.) Petitioner argues no firearms were involved, and thus his counsel's failure to object clearly constitutes ineffective assistance of counsel. (*Id.*)

In response, the Government explains that the evidence presented at the hearings prevented Petitioner's counsel from denying the existence of weapons at Petitioner's office. (Doc. 15 at 19–20.) The Government states that two witnesses testified to finding firearms at Petitioner's office or on Petitioner's person. (*Id.*) In addition, the Government notes Petitioner told the Court at his sentencing, "when they stopped me, they got a .22." (*Id.*) Based on this evidence, the Government asserts Petitioner's counsel could not have objected to all references to firearms, but did successfully object to the firearm enhancement. (*Id.*)

The evidence presented at the sentencing hearing demonstrates Petitioner's counsel were not ineffective with respect to the evidence of firearms. Mr. Whitson testified that a firearm was located in the reception area of Petitioner's clinic (Doc. 151 at 19 [Whitson Direct Exam. at 19:17–

15

24], 25 [Whitson Cross Exam. at 25:5–10] in Case No. 1:12-cr-50.) Agent Kennedy testified a firearm was recovered from Petitioner's person (Doc. 151 at 43 [Kennedy Direct Exam. at 43:4–9], 86 [Kennedy Cross Exam. at 86:17–19] in Case No. 1:12-cr-50), and a security guard at the clinic carried a firearm (Doc. 151 at 41–42 [Kennedy Direct Exam. at 41:15–20, 42:1–6] in Case No. 1:12-cr-50). There is no evidence this testimony was false or misleading. Further, Petitioner has not provided any objections his counsel could have raised in response to the witnesses testifying to what they observed. *See Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) ("Counsel was not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel."). Thus, Petitioner has not provided any evidence to overcome the presumption that his counsel's conduct was reasonable. Accordingly, Petitioner's claim of ineffective assistance of counsel on this issue will be denied.

### 6. Claim of Cumulative Error

Finally, Petitioner claims "when one considers the total effect of all of my Attorney's errors . . . coupled with their performance being well below the objective standard of reasonableness, and grossly deficient, one might conclude that the outcome of my sentencing would have been different." (Doc. 2 at 21.) Thus, it appears Petitioner is contending the cumulative effect of the alleged errors supports a separate ineffective assistance of counsel claim.

In response, the Government asserts that, even if a "cumulative errors" claim is a viable one, it does not provide relief when a petitioner fails to establish any errors by counsel. (Doc. 15 at 20.)

As discussed above, Petitioner has not demonstrated any errors by his counsel rising to the level of a deficient performance that prejudiced his defense. Accordingly, even assuming Petitioner's claim of cumulative error can provide a basis for relief, his claim fails because "there

16

are simply no errors to cumulate." *See Getsy v. Mitchell*, 495 F.3d 295, 317 (6th Cir. 2007) (en banc).

  **C.**   ***Brady* Allegations**

  On July 24, 2018, six months after Petitioner filed his 28 U.S.C. § 2255 petition, Petitioner filed a motion to expand the record pursuant to Rule 7 of the Rules Governing 2255 Proceedings. (Doc. 11.) Within that motion, Petitioner alleged that the Government withheld exculpatory evidence, specifically Mr. Waller's medical records and two affidavits procured by Petitioner's former counsel. (*Id.* at 1–2.) Petitioner asserts the Government's conduct violated its duties under *Brady v. Maryland*, 373 U.S. 83 (1963). (*Id.*) The Court interpreted Petitioner's motion as a motion to supplement, granted his motion, and directed the Government to respond to Petitioner's *Brady* claim. (Doc. 12.)

  The Government first contends Petitioner's supplement should be dismissed as untimely because Petitioner's allegations of *Brady* violations do not arise out of the same core of operative facts as the rest of his § 2255 petition. (Doc. 15 at 21–24.) The Government then asserts that Petitioner has not established any *Brady* violations because Petitioner's counsel had the medical records and the affidavits Petitioner is claiming were withheld. (*Id.*) Finally, even if the medical records were not provided, the Government asserts the records would not have been exculpatory or favorable to Petitioner. (*Id.* at 22–23.)

  Under Federal Rule of Civil Procedure 15(c)(2), "pleading amendments relate back to the date of the original pleading when the claim asserted in the amended plea 'arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.'" *Mayle v. Felix*, 545 U.S. 644, 656 (2005) (quoting Fed. R. Civ. P. 15(c)(2) in the context of federal habeas proceedings). Accordingly, an amended pleading will relate back if the original claims and the

17

new claims are "tied to a common core of operative facts[.]" *Id.* at 664. If an amended pleading does not relate back to the original claim and falls outside the one-year statute of limitations, it will be denied. *See Howard v. United States*, 533 F.3d 472, 475–76 (6th Cir. 2008).

Petitioner's original § 2255 petition challenged the validity of his guilty plea and raised several claims of ineffective assistance of counsel based on his counsel's performance at the sentencing hearing. (Doc. 2.) The petition did not discuss any facts related to the Government's actions prior to the sentencing hearings. (*See id.*) Petitioner's new claim relates to the Government's actions prior to the sentencing hearings, specifically the alleged withholding of exculpatory evidence. (Doc. 11 at 1–2.) As a result, the original claims and the new claim are not tied to a common core of operative facts. Because the *Brady* claim was filed after the one-year statute of limitations expired, the new claim is untimely.

However, even if the new claim did relate back to the original claims, Petitioner's *Brady* claim would fail on the merits.

To succeed on a *Brady* claim, a petitioner must demonstrate that (1) the evidence is favorable to the petitioner "either because it is exculpatory, or because it is impeaching;" (2) the evidence was suppressed by the Government "either willfully or inadvertently;" and (3) "prejudice must have ensued." *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (internal quotations and citations omitted).

Here, Petitioner contends Mr. Waller's medical records and two affidavits from pain specialists were withheld by the Government. However, as discussed above, his counsel entered Mr. Waller's medical records into evidence during the sentencing hearing and discussed the records throughout the hearings. Further, the two affidavits from pain specialists were obtained by Petitioner's former counsel, not the Government. Thus, the Government did not withhold any

18

evidence from Petitioner. As a result, Petitioner has failed to demonstrate that the evidence was suppressed by the Government. *See Banks*, 540 U.S. at 691. Accordingly, Petitioner's *Brady* claim will be denied.

## VI. <u>CONCLUSION</u>

For the foregoing reasons, Petitioner's § 2255 motion (Docs. 2, 11) will be **DENIED**. Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability ("COA") should be granted. A COA should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a grant of a COA, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court finds that reasonable jurists could not conclude that Petitioner's claims deserve further review, as Petitioner has failed to make a substantial showing of the denial of a constitutional right and reasonable jurists would not debate the Court's finding that Petitioner is not entitled to relief under § 2255. Accordingly, a COA will not issue. Further, the Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. Accordingly, this Court will **DENY** Petitioner leave to proceed in forma pauperis on appeal. *See* Fed. R. App. P. 24.

**An appropriate order will enter.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**